Caroline Lobdell (OSB #021236)
Aaron Bruner (OSB #133113)
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119-327
Portland, Oregon 97219
Email: clobdell@wrlegal.org
Email: abruner@wrlegal.org
Phone: (503) 768-8500

Julie A. Weis (OSB #974320)
HAGLUND KELLEY LLP
2177 SW Broadway
Portland, Oregon 97201
Email: weis@hk-law.com
Phone: (503) 225-0777

*Counsel for Proposed Defendant-Intervenors*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| **GREATER HELLS CANYON COUNCIL, OREGON WILD, CENTRAL OREGON LANDWATCH, SIERRA CLUB, GREAT OLD BROADS FOR WILDERNESS**, and **WILDEARTH GUARDIANS**,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>**HOMER WILKES,** in his official capacity as Undersecretary for Natural Resources and Environment; **GLENN CASMASSA**, in his official capacity as Regional Forester for Region 6; and the **UNITED STATES FOREST SERVICE**,<br><br>　　Defendants,<br><br>**AMERICAN FOREST RESOURCE COUNCIL**, an Oregon non-profit association, and **EASTERN OREGON COUNTIES ASSOCIATION**, an unincorporated association,<br><br>　　Proposed Defendant-Intervenors. | Civil No. 2:22-cv-00859-HL<br><br>**MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT BY AMERICAN FOREST RESOURCE COUNCIL AND EASTERN OREGON COUNTIES ASSOCIATION**<br><br>**Pursuant to Fed. R. Civ. P. 24**<br><br><u>**Request for Oral Argument**</u> |

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT

## LOCAL RULE 7-1(A) CERTIFICATION

Pursuant to Local Rule 7-1, Proposed Intervenors American Forest Resource Council ("AFRC") and Eastern Oregon Counties Association ("EOCA") (collectively "Proposed Intervenors") certify that undersigned counsel conferred with counsel for Plaintiffs and Federal Defendants on this motion. Counsel for Plaintiffs indicated that Plaintiffs reserve taking a position on the motion until they have a chance to review it. Counsel for Federal Defendants indicated that Federal Defendants reserve taking a position on the motion to intervene "as of right" until they have a chance to review it; however, Federal Defendants take no position on the alternative motion for "permissive" intervention.

## MOTION

Pursuant to Fed. R. Civ. P. 24, Proposed Intervenors respectfully move to intervene as defendants in this case, which challenges the U.S. Forest Service's ("USFS" or "Forest Service") January 15, 2021 Decision Notice for Forest Management Direction for Large Diameter Trees in Eastern Oregon and Southeastern Washington ("Eastside Screens Amendment").

The Court should grant the motion to intervene as of right under Rule 24(a)(2) because Proposed Intervenors satisfy all four intervention factors. This motion is timely since Plaintiffs recently filed their complaint on June 14, 2022, ECF No. 1, and amended their complaint on August 22, 2021. ECF No. 12. Federal Defendants filed their answer on September 13, 2022. ECF No. 15. Proposed Intervenors have a significant protectable interest in the litigation. AFRC represents forest products manufacturers and affiliated companies who purchase and operate timber sales on lands managed by the Forest Service within the project area for the Eastside Screens Amendment. EOCA represents a broad array of constituents across Oregon's eastern and central counties. EOCA counties have significant amounts of land within their borders managed

by the Forest Service and therefore also have interests in harvestable timber, healthy forests, and recreation access to forest users. These interests will be adversely affected if Plaintiffs succeed in vacating the Eastside Screens Amendment and delaying forest management activities within the project area. The Federal government does not adequately represent Proposed Intervenors because its responsibilities are broader than movants' local and regional interests. Thus, intervention as of right is warranted.

In the alternative, the Court may also grant permissive intervention under Rule 24(b) because Proposed Intervenors' claims and defenses share common questions of law and fact with the main action.

This motion is supported by the following memorandum, the Declarations of Andy Geissler and Barry Shullanberger, and a proposed answer.

## MEMORANDUM

### I.  INTRODUCTION

The Court should grant intervention as of right so that Proposed Intervenors may participate in this case as defendants. Proposed Intervenors have significant economic, social, and ecological interests in ensuring active forest management occurs in ways that benefit the communities in eastern Oregon and southeastern Washington. These largely rural communities depend on healthy forests for a wide range of uses, including timber, various natural resources, and recreation. Plaintiffs' lawsuit seeks to vacate the Eastside Screens Amendment, which clarifies the Forest Service's priorities for treatment of large-diameter trees across six forests in Oregon and Washington that are currently overstocked and at risk for insect and disease outbreaks and catastrophic wildfire. First Amended Complaint, ECF No. 12, ¶¶ 1-6. Plaintiffs effectively seek to prohibit the Forest Service from modernizing the so-called "21-inch rule" in a

way that would be adaptable to the various ecosystems in the region and will help these areas return to healthy, diverse, and desired conditions.

Since 2003, there have been 21 project-specific amendments to forest plans related to the 21-inch rule. Declaration of Andy Geissler ("Geissler Decl."), ¶ 7. These project-specific forest plan amendments generally focused on removing young grand fir or white fir that were over 21-inches in dry ponderosa pine forests, but some also addressed removal of lodgepole, Douglas-fir, and ponderosa pine. Geissler Decl. ¶ 7. Project-level analyses have shown no significant adverse impacts to resources as a result of those project-specific amendments and, in fact, have demonstrated positive impacts in terms of restoring tree stand and forest landscape resilience. Geissler Decl. ¶ 7. These repeated efforts to design and manage projects in eastern Oregon with flexibility in tree removal, rather than based on size alone, is a testament to the ineffectiveness of the old strategy as National Forests in eastern Oregon either fail to reach their desired conditions of late and old structure. Geissler Decl. ¶ 7. Instead of repeatedly pursuing project-specific plan amendments to modify the "one size fits all" 21-inch rule, the Eastside Screens Amendment provided for such projects with limited exceptions to the 21-inch rule to proceed without unnecessarily duplicative and time-intensive analysis.

Plaintiffs seek an order holding unlawful and setting aside the Eastside Screens Amendment, as well as an injunction prohibiting the Forest Service from implementing this direction through site-specific projects. First Am. Compl., ¶¶ 7-8. If the Court should grant Plaintiffs' requested relief, the Forest Service would be precluded from taking necessary management actions that would improve forest health, including actions that may prevent insect and disease infestations and future catastrophic wildfires. This would adversely affect Proposed Intervenors' economic, social, and ecological interests.

## II.     BACKGROUND

### A. American Forest Resource Council.

AFRC is a regional trade association whose purpose is to advocate for sustained-yield timber harvests on public lands throughout the West to enhance forest health and resistance to fire, insects, and disease. Geissler Decl. ¶ 4. Many of AFRC's members rely on access to federal timber from the six eastern Oregon and southeastern Washington national forests, and purchase timber from national forests to supply their mills. *Id*. ¶¶ 5, 20. If there is a commercial component to projects developed pursuant to the Eastside Screens Amendment, it is likely that the timber will either be purchased by an AFRC member or processed at an AFRC member mill, given about 75% of the volume currently under contract on these six forests is with AFRC members. *Id.* ¶ 20.  AFRC also has a related interest in increased forest health and resiliency in these forests. *Id.* ¶ 22.

For decades, AFRC has served its membership by promoting active management to attain productive public forests, protect adjoining private forests, and assure community stability. *Id*. ¶ 4. AFRC frequently participates in the scoping process for federal timber sales, helping ensure that projects adhere to the applicable forest and resource management plans, including here on the Eastside Screens Amendment. *Id.* ¶¶ 8-9. In its comments and discussions with the Forest Service, AFRC proposed alternatives to create realistic and implementable alternatives to the 21-inch rule. *See id.*; Geissler Exs. A and B. In particular, AFRC supported alternatives that would enable the Forest Service to more effectively attain desired forest outcomes and that could be adapted to the multitude of unique forest ecosystems in eastern Oregon, while also continuing to maintain and/or enhance Late Old Structure ("LOS") components in stands subject to timber harvest as much as possible. *Id.* ¶¶ 8-10. Ultimately, the final version of the Eastside Screens

Amendment recognized established science showing that the goal of recruitment of large trees across ecosystems is not attainable with a one-size-fits-all diameter limit that is unadaptive to site-specific conditions, and flexibility is critical to improving forest health in these forests. *Id.* ¶¶ 10-11.

In addition to participating in the rulemaking process for the Eastside Screens Amendment, AFRC has been engaged (and in some cases, continues to be engaged) in the projects that are implicated in the litigation. *Id.* ¶¶ 13-19. These forests are currently facing a buildup of fuels that could lead to catastrophic wildfire. Geissler Decl. ¶ 22. In many cases, removal of trees over 21 inches is needed to achieve desired conditions and increase forest health and resiliency. *E.g.*, *id.* ¶ 16 (discussing AFRC and Ochoco Forest Restoration Collaborative site visit and need to remove some trees over 21-inches to achieve desired conditions). Among other benefits, treatment of these overstocked forests will increase resistance to wildfire outbreaks, provide safe and effective locations for fire suppression efforts, and help prevent landscape-level insect and disease outbreaks. *Id.*

Vacating the Eastside Screens Amendment would negatively impact AFRC's members by delaying or precluding implementation of such projects pursuant to the Eastside Screens Amendment, including those identified by Plaintiffs. First Am. Compl., ¶ 8. Reduction in the volume of timber available will necessarily affect AFRC and its members, who have a strong interest in maintaining the economic vitality of rural eastern Oregon counties and the availability of family-wage jobs that the forest products industry provides. *Id.*

### B. Eastern Oregon Counties Association.

EOCA is an association of local governments representing 13 eastern and central Oregon counties, including Baker, Crook, Deschutes, Grant, Harney, Jefferson, Klamath, Lake, Malheur,

Morrow, Sherman, Umatilla, Union, Wallowa, and Wheeler counties. Declaration of Barry Shullanberger ("Shullanberger Decl."), at ¶ 6. The six forests within the project area for the Eastside Screens Amendment range across eastern and central Oregon – including the Umatilla, Wallowa-Whitman, Malheur, Ochoco, Deschutes, and Fremont-Winema National Forests. *Id.* ¶ 8. Those forests touch the vast majority of EOCA counties. *Id.* Thus, EOCA counties and their constituents may be directly affected by this case.

In particular, EOCA has a strong interest in forest management on federal lands within the boundaries of EOCA counties. *Id.* ¶¶ 8-10. A significant portion of EOCA counties' constituents depend on access to the outdoors and natural resources available on national forest lands for their employment (in logging and milling operations, outfitter and guide businesses, and ranching and farming operations, mining, etc.), recreational opportunities (such as hiking, hunting, fishing, camping, and many others), or both. *Id.* ¶ 9. Forest management decisions have wide-ranging effects for these largely rural communities, including the resiliency of these forests to catastrophic wildfire. *Id.* ¶ 10. This is particularly true, given many forests in the project area are facing increased scale and risk of fire severity, and reduced forest resiliency to drought, insects, and disease associated with a lack of density, diversity, and altered structure and hydrologic function of watersheds. *Id.* These public resources and habitat such as waterways and associated sensitive species, homes, ranch land, and private/industrial timberland are in jeopardy due to these conditions. *Id.*

EOCA counties also have direct economic interests at stake. Given unique challenges associated with a diverse and rural geography, EOCA counties depend heavily on Oregon's natural resource economy. *Id.* ¶ 7. At the same time, a significant portion of the counties' land base is owned by the federal government. *Id.* ¶ 8. This greatly reduces the taxable land base

within the County. *Id.* ¶ 8. To offset their lack of taxable income, EOCA counties receive funds from the federal government in the form of timber sale receipts from the Forest Service and other sources. *See* 16 U.S.C. § 500. Thus, federal timber sales implemented pursuant to the Eastside Screens Amendment will generate much-needed timber receipts for EOCA counties. *Id.*

Another form of federal land payments to counties is the Payments in Lieu of Taxes ("PILT") program. *Id.* ¶ 13. PILT payments are designed to offset losses in property taxes due to the existence of nontaxable Federal lands within their boundaries, and are used to fund vital services such as firefighting and police protection, construction of public schools and roads, and search-and-rescue operations. *Id.* Thus, EOCA is uniquely situated given fluctuations resulting from changes to Federal land management can directly affect budgets for public services in these counties and a decision in this case may affect those revenues. *Id.*

Vacatur of the Eastside Screens Amendment may stifle forest management on federal public lands in eastern Oregon. This would result in an economic loss for EOCA counties, as well as socioeconomic harm and increased wildfire risk to rural communities.

### III.   ARGUMENT

#### A.   Standards for Intervention.

A party may intervene as a matter of right where: (1) its motion is timely; (2) the applicant asserts an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention, the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2).

Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*). Rather, "[i]t is generally

enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* Moreover, an applicant's interest in the litigation is sufficient under the Rule so long as "it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* The court accepts as true the nonconclusory allegations and evidence submitted in support of a motion to intervene. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).[1] An organization may intervene on behalf of its members. *Id.* at 822 n.3.

In 2011, the Ninth Circuit, sitting *en banc*, abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion for intervention should be evaluated based solely on the Rule 24 factors. *Wilderness Soc'y*, 630 F.3d at 1177, 1179-81. The unanimous *en banc* panel confirmed that an asserted interest need only relate to the "property or transaction that is the subject of the action[,]" and that it was improper to "focus[ ] on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit" in evaluating an intervention motion. *Id.* at 1178 (quoting Rule 24(a)). The court reaffirmed Rule 24 is construed "broadly in favor of proposed intervenors." *Id.* at 1179.

Under Fed. R. Civ. P. 24(b), the Court has discretion to grant permissive intervention to anyone who upon timely motion has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b). In exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Id.*

---

[1] An organization may intervene on behalf of its members so long as it shows "(1) members have a legally protectable interest sufficient for intervention; (2) the defense of the [decision] is germane to the associations' purposes; and (3) individual [members] are not necessary participants in the suit." *Berg*, 268 F.3d at 822 n.3. Proposed Intervenors AFRC and EOCA have made these showings here.

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT – Page 8

### B. Proposed Intervenors Have a Right to Intervene.

#### 1. The Motion Is Timely.

Proposed Intervenors meet the standards for intervention of right. First, the motion is timely. In determining whether a motion to intervene is timely, three factors are weighed: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *Orange Cty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).

Plaintiffs first filed their complaint on June 14, 2021. ECF No. 1. On August 22, 2022, Plaintiffs filed their First Amended Complaint. ECF No. 12. Federal Defendant filed its answer on September 13, 2022. A Rule 16 Conference with the Court is set for October 11, 2022. However, no substantive briefing has yet occurred and the case is still in its earliest stages.

Intervention at this stage would not prejudice the existing parties because no party has engaged in any substantive proceedings at this time. Courts have held that intervening before merits briefing or a ruling on the merits is timely. *See, e.g.*, *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (intervention motion was held timely when it was filed shortly after the complaint was filed); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding a motion to intervene timely when filed "before any hearings or rulings on substantive matters"); *WildEarth Guardians v. Hoover*, No. 1:16-CV-65-M-DWM, 2016 WL 7388316, at *1 (D. Mont. Dec. 20, 2016) (finding that the parties would not be prejudiced by intervention because the proposed intervenor was able to follow briefing schedule already in place). Thus, the motion is timely.

#### 2. Movants have interests that are related to the subject of the action.

Second, Proposed Intervenors have interests that are related to the property or transaction that is subject to the action, that is, interests that are "significantly protectable." *Donaldson v.*

*United States*, 400 U.S. 517, 531 (1971). The significantly protectable interest requirement is a "practical, threshold inquiry" used to "dispos[e] of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks and citation omitted). There is no "clear-cut [test] or bright-line rule" for determining whether a movant has such an interest. *Id.* That said, a movant must establish its interest "is protectable under some law" and "there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1180 (internal quotation marks omitted).

Plaintiffs seek to invalidate the Eastside Screens Amendment and enjoin all forest health projects adopted pursuant to the amendment, which would be delayed, perhaps indefinitely. ECF No. 12, ¶¶ 7-8. Both AFRC and EOCA have direct economic interests in such projects, given that timber sales associated with these projects typically generate timber receipts for the affected county, log sale receipts for companies conducting the sales, and lumber and manufacturing income for the mills receiving the lumber. *See* 16 U.S.C. § 500; Geissler Decl. ¶¶ 20-21; Shullanberger Decl. ¶ 12-13. AFRC members and EOCA constituents also have an interest in a reliable supply of timber available for local sawmills and downstream production of forest products, as well as the much needed high-wage jobs these industries support in rural areas. Geissler Decl. ¶ 20-21; Shullanberger Decl. ¶¶ 8-9.

Timber companies and loggers "have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing the efficiency of their method of timber-cutting." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3rd Cir. 1998) (reversing denial of motion to intervene by timber companies and groups in environmental litigation). Therefore, companies that use public timber have "a broader interest in any litigation that might impede [their] ability

to obtain timber from federal lands in the future." *Ctr. For Biological Diversity v. Gould*, No. 1:15-cv-01329-WBS-GSA, 2015 WL 6951295, at *2 (E.D. Cal. Nov. 10, 2015); *cf. N. Cascades Conservation Council v. United States Forest Serv.*, No. 2:20-CV-01321-RAJ-BAT, 2021 WL 871421, at *3 (W.D. Wash. Mar. 9, 2021).

Beyond their economic interests, Proposed Intervenors have a strong interest in forest management and wildfire mitigation efforts on federal lands, including policies and decisions that affect the beneficial use of Oregon's public lands or which may pose significant risks to their constituents. Geissler Decl. ¶¶ 6, 8-10, 22 (discussing AFRC's involvement in planning process for Eastside Screens Amendment); Shullanberger Decl. ¶ 7. In particular, AFRC and EOCA share an interest in the continued viability of the timber industry that is the cultural lifeblood of many rural Oregon communities (and dependent on a steady, safe, and accessible supply of timber from federal forests). Geissler Decl. ¶¶ 5, 20-22; Shullanberger Decl. ¶¶ 7, 9. EOCA also has a governmental interest in ensuring its communities and residents are safe and wildfire risks are mitigated. Shullanberger Decl. ¶¶ 9-10. EOCA advocates for the rural communities in eastern and central Oregon that are most likely to be impacted by projects implemented pursuant to the Eastside Screens Amendment, given that the boundaries of the six forests in the project area touch the borders of almost every EOCA county. Shullanberger Decl. ¶ 8. The forests in these areas are already at risk of insect and disease outbreaks and catastrophic wildfire due to overstocked conditions in these national forests. Geissler Decl. ¶¶ 13-19, 22; Shullanberger Decl. ¶ 10. Meanwhile, a variety of different types of projects authorized pursuant to the Eastside Screens Amendment—and that Plaintiffs seek to enjoin—focus on forest resilience, reduced fuel loading, wildlife habitat restoration, and providing safe and effective locations for fire suppression efforts. Geissler Decl. ¶¶ 13-19; Shullanberger Decl. ¶¶ 11-12. EOCA and its

member counties have an interest in these projects proceeding in order to reduce risks for adjacent private landowners, as well as resource-user industries and recreational interests that depend on access to National Forest System lands. Shullanberger Decl. ¶ 9-10. AFRC shares this interest in public safety and forest health, which is inextricably linked to the continued availability of timber in these areas. Geissler Decl. ¶ 22.

Such public safety and forest health interests have long been recognized as sufficient for intervention. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496-97 (9th Cir. 1995) (holding interests such as public safety and forest health asserted by the State of Arizona and Apache County were significantly protectable interests); *accord Hells Canyon Pres. Council v. Stein*, No. 2:17-CV-00843-SU, 2017 WL 3641419, at *2 (D. Or. Aug. 24, 2017) (granting intervention to Wallowa County where the county and its residents "have an interest in fire reduction near their land"); *Native Ecosystem Council*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 (granting intervention to Meagher County because it had established a number of interests in "active forest management focusing on wildfire concerns and fuel management as being of primary concern to the County"); *N. Cascades Conservation Council*, 2021 WL 871421, at *3.[2]

Accordingly, Proposed Intervenors have both economic and other interests that support intervention of right in this case. *See Wilderness Soc'y*, 630 F.3d at 1180.

---

[2] Relatedly, forest health and wildfire concerns of landowners adjacent to public lands have been found significant enough to meet the more rigorous standard for demonstrating Article III standing. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2011). For example, an interest in land adjacent to federal land was a sufficient "concrete interest" to confer standing to challenge the designation of critical habitat under NEPA. *Douglas County v. Babbitt*, 48 F.3d 1495, 1501 (9th Cir. 1995). Likewise, one of AFRC's predecessor organizations along with its members had standing to pursue a challenge against the original Eastside Screens decision. *See Prairie Wood Prod. v. Glickman*, 971 F. Supp. 457 (D. Or. 1997). Having cleared that relatively more significant hurdle, AFRC's significant interests for purposes of intervention in this case should be clear.

      **3.     Movants would be substantially affected by the disposition of this action.**

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822. The third element often follows as a matter of course if the second element is met. *See, e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *Native Ecosystems Council*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 ("On a broader scale, if Plaintiffs are successful in challenging the Farm Bill categorical exclusion, it will also affect future contracts and employment for members of the logging associations.").

      Here, Plaintiffs' requested relief would have a legal and practical effect on the interests of Proposed Intervenors. Plaintiffs' requested remedy would impair AFRC's and EOCA's interests in an economical and accessible timber supply now and in the future. Geissler Decl. ¶ 20; Shullanberger Decl. ¶¶ 9-10. This would endanger the livelihoods of AFRC's members, and the economic and socioeconomic health of timber-dependent EOCA counties. Geissler Decl. ¶ 21; Shullanberger Decl. ¶¶ 11, 13. Likewise, Proposed Intervenors' interests in general forest health and reducing the risk of insect and disease outbreaks and catastrophic wildfires also stand to be affected should the Court invalidate the Eastside Screens Amendment and enjoin projects designed to increase forest resiliency. Geissler Decl. ¶ 22-23; Shullanberger Decl. ¶ 11-13. Accordingly, Proposed Intervenors satisfy the third requirement for intervention as of right.

      **4.     Movants are not adequately represented by the existing parties.**

Finally, Proposed Intervenors are not adequately represented in this case. An "applicant-

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT – Page 13

intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation may be inadequate." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (2011). This prong is satisfied where a movant's interests are "potentially more narrow than the public's at large" and where government representation of those interests "*may have been* inadequate." *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (quoting *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998); (emphasis in *Allied Concrete*). *Allied* reversed a district court's denial of intervention; *Mendonca* affirmed a grant of intervention to a similar group, holding this factor was satisfied because the movant's interests were "potentially more narrow and parochial than the interests of the public at large." *Mendonca*, 152 F.3d at 1190.

A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998).

Proposed Intervenors' interests are narrower in scope than that of the Forest Service. Geissler Decl. ¶¶ 24-26; Shullanberger Decl. ¶ 14. While the agency has an interest in forest health, reducing insect and disease outbreaks, and preventing catastrophic wildfire, AFRC members and EOCA counties have direct economic, cultural, ecological, recreational, and other interests at stake that the Forest Service simply does not share. Geissler Decl. ¶¶ 20-23; Shullanberger Decl. ¶¶ 9-10, 13. Put another way, the Forest Service has a broader public interest than Proposed Intervenors. *See Forest Conservation Council*, 66 F.3d at 1499 (holding that a

federal agency "is required to represent a broader view than the more narrow, parochial interest of [proposed intervenors] the State of Arizona and Apache County."); *Mont. Elders for a Livable Tomorrow v. U.S. Office of Surface Mining*, No. CV 15–106–M–DWM, 2015 WL 12748263 at *1 (D. Mont. Dec. 11, 2015) (finding this factor satisfied where movant had "a personal interest that does not belong to the general public and because Plaintiffs and Defendants are representing the public interest"); *Native Ecosystem Council*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 (noting that while both the Forest Service and Proposed Defendant–Intervenors seek to defend the regulatory process that was followed in this case, their ultimate goals are different).

As recognized in *Berg*, a federal agency cannot be expected to protect the economic interests of industry associations like AFRC. *See Berg*, 268 F.3d at 823 (holding that the interests of private concerns were not adequately represented by federal and municipal defendants in an ESA challenge to the City of San Diego's comprehensive land management plan). Thus, inadequate representation exists here where the broader interests of the Forest Service do not align with Proposed Intervenors' economic, social, and ecological (forest health) interests. Accordingly, Proposed Intervenors have met the minimal showing required to demonstrate that the existing parties do not adequately represent their interests.

Given these interests, Proposed Intervenor AFRC has successfully intervened in numerous cases challenging various administrative rules. *Id*. ¶ 25. For example, AFRC successfully intervened in a case involving a challenge to the Council on Environmental Quality's (CEQ) NEPA regulations, Update to Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 42,302 (July 16, 2020). *See Wild Virginia et al. v. Council on Environmental Quality et al.*, 3:20-cv-00045-JPJ-PMS, Order Granting Intervention, ECF No. 72 (W.D. Va. Aug. 31, 2020). AFRC also was granted

intervention in a number of other cases challenging the various NEPA regulations, as the governments' interests and legal interpretations do not always align with those of the association. Geissler Decl. ¶ 25.

For the foregoing reasons, Proposed Intervenors have a right to intervene to defend the Eastside Screens Amendment.

### C. Alternatively, the Court Should Grant Permissive Intervention.

Given their clear interests in this case, Proposed Intervenors believe they meet the standard for intervention as of right under Fed. R. Civ. P. 24(a) and that permissive intervention is therefore not appropriate here. Nevertheless, out of an abundance of caution, Proposed Intervenors alternatively move for permissive intervention pursuant to Fed. R. Civ. P. 24(b).

District courts have broad discretion to grant permissive intervention. Fed. R. Civ. P. 24(b). So long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," a court may grant permissive intervention. In *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2003), a case involving a NEPA challenge to the Forest Service's Roadless Area Conservation Rule, environmental groups were allowed to intervene under Rule 24(b) where they asserted "defenses of the Roadless Rule directly responsive to the claim for injunction," *Id.* at 1110, along with "an interest in the use and enjoyment of roadless lands, and in the conservation of roadless lands, in the national forest lands subject to the Roadless Rule . . . ." *Id.* at 1110-11. Similarly, the Ninth Circuit recently found that AFRC and other resource industry associations were improperly denied permissive intervention to defend a Fish and Wildlife Service rule delisting the gray wolf given their unique interests and expertise on the issue. *Defenders of Wildlife v. U.S. Fish & Wildlife Serv.*, 2022 WL 3656444 (9th Cir. Aug. 24, 2022) (finding District Court failed to consider their unique interests

and expertise, and that the current parties would not undoubtedly make all of the same arguments as proposed intervenors).

Proposed Intervenors seek to participate to defend the Eastside Screens Amendment being challenged by Plaintiffs. Like the successful intervenors in *Kootenai Tribe*, Proposed Intervenors have an interest in the Eastside Screens Amendment and the site-specific projects targeted by Plaintiffs in their complaint. Further, Proposed Intervenors have unique interests and particular expertise regarding real-world implementation of the Eastside Screens and the legal and practical issues stemming from its nearly 20-year history that have had effects on the timber industry and eastern Oregonians more broadly.

### IV.     CONCLUSION

For the forgoing reasons, American Forest Resource Council and Eastern Oregon Counties Association respectfully request that the Court grant their motion to intervene.

Dated this 3rd day of October, 2022.

Caroline Lobdell (OSB #021236)
Aaron Bruner (OSB #133113)
/s/ Aaron Bruner
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119-327
Portland, Oregon 97219
Email: clobdell@wrlegal.org
Email: abruner@wrlegal.org
Phone: (503) 768-8500

Julie A. Weis (OSB #974320)
HAGLUND KELLEY LLP
2177 SW Broadway
Portland, Oregon 97201
Email: weis@hk-law.com
Phone: (503) 225-0777

*Attorneys for Proposed Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

    I, Aaron Bruner, hereby certify that, on October 3, 2022, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

    Dated this 3rd day of October, 2022.

               /s/ Aaron Bruner
               Aaron Bruner