Meriel L. Darzen, OSB No. 113645,
meriel@crag.org
Oliver J. H. Stiefel OSB No. 135436
oliver@crag.org
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Phone: (503) 525-2725
Fax: (503) 296-5454

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

| | |
|---|---|
| **GREATER HELLS CANYON COUNCIL**, **OREGON WILD**, **CENTRAL OREGON LANDWATCH**, **SIERRA CLUB**, **GREAT OLD BROADS FOR WILDERNESS**, and **WILDEARTH GUARDIANS**, <br><br> Plaintiffs, <br><br> v. <br><br> **HOMER WILKES**, in his official capacity as Undersecretary for Natural Resources and Environment; **GLENN CASAMASSA**, in his capacity as Regional Forester for Region 6; and the **UNITED STATES FOREST SERVICE**, <br><br> Defendants, <br><br> **AMERICAN FOREST RESOURCE COUNCIL**, and **EASTERN OREGON COUNTIES ASSOCIATION**, <br><br> Defendants-Intervenors. | Case No. 2:22-cv-00859-HL <br><br> **DECLARATION OF CHRIS KRUPP** |

I, Chris Krupp, declare as follows:

## INTRODUCTION

1. I reside in Seattle, Washington.

2. I am an employee and a member of WildEarth Guardians. I have worked at WildEarth Guardians since September 2016. I have been a member of WildEarth Guardians' Wild Bunch—the organization's designation for monthly donors—since September 2018.

3. WildEarth Guardians is a non-profit environmental organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West. WildEarth Guardians is headquartered in Santa Fe, New Mexico, and maintains offices across the West, including in Portland, Oregon, and Seattle, Washington. WildEarth Guardians has a long record of working in the public interest on matters regarding National Forest management, including but not limited to management related to forest restoration, vegetation management, forest roads, and protection of imperiled wildlife on public lands. WildEarth Guardians advocates for full compliance with federal environmental laws. WildEarth Guardians' aims are to preserve the integrity of the existing legal and policy framework related to forest management, ensure Forest Service decisions protect important places for wildlife and ecological health, and limit the impacts of resource extraction.

4. WildEarth Guardians has over 197,000 members and supporters, including 144 members in Oregon and 173 members in Washington. Members and supporters of WildEarth Guardians, including me, use the Deschutes, Fremont-Winema, Malheur, Ochoco, Umatilla, and Wallowa-Whitman National Forests for recreational, aesthetic, scientific, and other purposes.

//

## I. WILDEARTH GUARDIANS AND THE EASTSIDE SCREENS

5. I am WildEarth Guardians' Public Lands Attorney. One part of my work is reviewing and commenting on proposed actions of federal land management agencies—including the Forest Service—on behalf of WildEarth Guardians' members. I engage with federal land management agencies when they are proposing actions, analyzing environmental impacts, and making decisions that affect public lands. I work to improve the agencies' management and decision-making. I advocate on behalf of WildEarth Guardians' members to reduce resource extraction—including logging of large and old trees—that harms fish, wildlife and their habitats, accelerates climate change, impairs water quality, and spoils recreation.

6. On October 13, 2020, WildEarth Guardians joined 24 other conservation organizations in submitting a letter to the Forest Service identifying flaws with the agency's preliminary environmental assessment ("EA") for Forest Management Direction for Large Diameter Trees in Eastern Oregon ("Amendment"), a proposal to amend the Eastside Screens, a series of measures developed in the 1990s to preserve old-growth/late-successional forest reserves on six national forests in eastern Oregon and southeastern Washington. The Amendment proposed to alter the land management plans for the Deschutes, Fremont-Winema, Malheur, Ochoco, Umatilla, and Wallowa-Whitman National Forests by eliminating a rule that prohibited the cutting of live trees that are more than 21 inches in diameter at breast height. WildEarth Guardians joined the comment letter because the best available science shows the Amendment will cause great harm to the ecosystems of the six national forests, as well as to the people—including Guardians' members—who visit those forests. The comment letter expressed our concern that eliminating the prohibition on

cutting large-diameter trees will impact the forests' ability to: accumulate carbon to mitigate climate change; create large snags and dead wood for fish and wildlife habitat; and support instream, hyporheic, and groundwater flows.

7. In early July 2021, I reviewed the Forest Service's public scoping letter for the South Warner Habitat Restoration Project (South Warner Project) on the Fremont-Winema National Forest. On July 19, 2021, I sent the Forest Service, via email, a comment letter concerning the scope of the environmental impacts analysis the agency needed to prepare for the South Warner Project in order to comply with the National Environmental Policy Act (NEPA). My comment letter suggested the Forest Service could not tier its South Warner Project NEPA analysis to the agency's January 12, 2021 decision to amend the Eastside Screens because that decision had been made in violation of law. My scoping comment letter also noted the South Warner Project, as proposed, would violate the Roadless Area Conservation Rule and that the project would worsen climate change by permitting the cutting of white fir and grand fir trees between 21 and 30 inches in diameter at breast height (21-30" dbh).

8. In early August 2021, I reviewed the Forest Service's public scoping letter for the Neighbor Wildfire Resilience Project (Neighbor Project) on the Malheur National Forest. On August 25, 2021, I sent the Forest Service, via email, a comment letter concerning the scope of the environmental impacts analysis the agency needed to prepare in order for the Neighbor Project to comply with NEPA. My comment letter suggested that the Forest Service could not tier its Neighbor Project NEPA analysis to the agency's January 12, 2021 decision to amend the Eastside Screens because that decision had been made in violation of law. The scoping comment letter also stated WildEarth Guardians' concern that the Neighbor

would harm the Malheur National Forest ecosystem by authorizing the logging of 21-30" dbh white and grand fir trees within 183 acres of old growth forest, 178 acres of forest managed as a riparian habitat conservation area, and 200 acres of forest within an inventoried roadless area.

9. On October 11, 2021, I sent the Forest Service, via email, a comment letter concerning the Draft Environmental Impact Statement (DEIS) the agency had prepared for the Cliff Knox Project on the Malheur National Forest. The comment letter noted that the Forest Service had improperly tiered the Cliff Knox Project DEIS to the Eastside Screens Amendment. The letter also noted the significant environmental harms that would result from the Cliff Knox Project's cutting of 21-30" dbh white and grand fir trees, including a decline in the Malheur National Forest's ability to accumulate substantial amounts of carbon to mitigate climate change and the deprival of large snags and dead wood that provide habitat for a wide variety of fish and wildlife.

10. On June 10, 2022, WildEarth Guardians filed an objection to the Cliff Knox FEIS and draft Record of Decision together with the other plaintiff groups and NRDC. Ultimately after an objection resolution meeting, the Forest Service agreed to make some of our requested changes to the Cliff Knox project but decided to move forward with logging large trees pursuant to the Screens Amendment in most commercial units of the project.

11. I use and enjoy the Fremont-Winema and Malheur National Forests. On October 6, 2021, I visited a portion of the Fremont-Winema National Forest northeast of Lakeview, Oregon. On that visit, I hiked the Rogger Peak Loop Trail in the South Warner Mountains and also hiked past the end of the maintained portion of Forest Service Road 4011, above Willow Creek Campground. On those hikes, I took pleasure in the quiet, the

clear, dry mountain air and the fall color of aspen trees on a sunny day. I walked up to and underneath 21-30" dbh grand fir and white fir trees that could, because of the Amendment, be cut as part of the South Warner Project. The loss of those trees would reduce the carbon storage capacity of the Fremont-Winema National Forest, lead to a shortage of snags and downed wood needed for important wildlife habitat, and cause declines in stream and groundwater flows. Those impacts would harm my aesthetic and recreational interests in the forest of the South Warner Project area, as well as harm my interest in a planet less impacted by climate change.

12. I visited a portion of the Malheur National Forest east of Seneca, Oregon, on October 7, 2021 to hike part of the Malheur River Trail. My hike started at the Hog Flat trailhead, above the Malheur River, a designated Wild and Scenic River. From there I followed the trail as it dropped down about 700 vertical feet into a canyon. On this hike, I enjoyed complete solitude. I took pleasure in the clear, dry mountain air and abundant sunshine. The river's flow was peaceful, and the part of the canyon closest to the river was green and lush. I took photos of the river. I saw mule deer along the trail on my hike back up to the trailhead. On the drive back to Seneca, over Forest Service Roads 1643 and 142, I appreciated seeing western larch trees in their bright orange fall color, mixed in among 21-30" dbh grand fir and white fir trees that will likely, because of the Amendment, be cut as part of the Cliff Knox Project. The loss of those firs would reduce the carbon storage capacity of the Malheur National Forest, lead to a shortage of snags and downed wood needed for important wildlife habitat, and cause declines in stream and groundwater flows. Those impacts would harm my aesthetic and recreational interests in the forest of the Cliff Knox Project area and harm my interest in a planet less impacted by climate change.

13. I visited a portion of the Malheur National Forest that included the Neighbor Project area northeast of Burns, Oregon, on October 7, 2021 to walk along the unpaved road and enjoy the open forest. While on the walk, I enjoyed watching several woodpeckers search for insects on snag trees. I also saw several 21-30" dbh fir trees in what was primarily Ponderosa pine forest. Those fir trees could, because of the Amendment, be cut and removed as part of the Neighbor Project. If those trees are cut they will never serve as snag trees for future generations of the woodpeckers I enjoyed watching. The loss of those firs would also reduce the carbon storage capacity of the Malheur National Forest. Those impacts would harm my aesthetic and recreational interests in the forest of the Neighbor Project area, as well as my interest in a planet less impacted by climate change.

**CONCLUSION**

14. If 21-30" dbh grand and white fir trees are cut and removed from forests as part of the South Warner, Neighbor, and Cliff Knox Projects, the harm to my interests and WildEarth Guardians' interests will be irreparable, because the benefits those trees provide by mitigating climate change, providing habitat, and enhancing stream and groundwater flows, will take generations to replace.

15. I intend to return to the Willow Creek Campground on the Fremont-Winema National Forest and the Malheur River Trail on the Malheur National Forest in October, 2023 to appreciate the fall colors of the aspen and larch trees, to observe birds and other wildlife, and to enjoy weather that is sunnier, warmer and drier than Seattle's at that time of year.

16. My interests and WildEarth Guardians' interests will be served when the Forest Service complies with NEPA by properly analyzing the impacts of the Amendment.

This will provide me and WildEarth Guardians with a more thorough, more accurate understanding of the harms of removing large-diameter trees from the South Warner, Neighbor, and Cliff Knox project areas. Forest Service compliance with NEPA will also provide me and WildEarth Guardians with a better means of evaluating the efficacy of these projects by presenting other, reasonable alternatives to the Amendment. Those alternatives may be preferable to the Amendment, as they might offer similar benefits to the Amendment without the ecosystem harms that come from cutting and removing large-diameter trees. Providing me, WildEarth Guardians, the public, and agency decisionmakers with more accurate information and reasonable alternatives will make it more likely that the Forest Service will decide not to adopt the Amendment. That would serve my interests and the interests of WildEarth Guardians in enjoying the recreational, scientific and aesthetic benefits of forests that contain large-diameter trees. It would also serve my and WildEarth Guardians' interests in a planet less impacted by climate change.

17. My interests and WildEarth Guardians' interests will be served when the Forest Service complies with the national forest planning regulation that requires it to provide the public an opportunity to appeal the Amendment decision before it is finalized. Depriving the public of its right to appeal the Amendment decision harmed WildEarth Guardians' interest in demanding that the Forest Service comply with NEPA and other federal environmental laws Providing the required appeal process will make it more likely the Forest Service will decide not to approve the Amendment. That would serve my interests and the interests of WildEarth Guardians in enjoying the recreational, scientific and aesthetic benefits of forests that contain large-diameter trees. It would also serve my and WildEarth Guardians' interests in a planet less impacted by climate change

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of December, 2022 in Seattle, Washington.

*[signature: Christoph J Krupp]*

CHRIS KRUPP