Meriel L. Darzen, OSB No. 113645,
meriel@crag.org
Oliver J. H. Stiefel OSB No. 135436
oliver@crag.org
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Phone: (503) 525-2725
Fax: (503) 296-5454

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| **GREATER HELLS CANYON COUNCIL**, **OREGON WILD, CENTRAL OREGON LANDWATCH, SIERRA CLUB, GREAT OLD BROADS FOR WILDERNESS**, and **WILDEARTH GUARDIANS**,<br><br>Plaintiffs,<br><br>v.<br><br>**HOMER WILKES**, in his official capacity as Undersecretary for Natural Resources and Environment; **GLENN CASAMASSA**, in his capacity as Regional Forester for Region 6; and the **UNITED STATES FOREST SERVICE**,<br><br>Defendants,<br><br>**AMERICAN FOREST RESOURCE COUNCIL**, and **EASTERN OREGON COUNTIES ASSOCIATION**,<br><br>Defendants-Intervenors. | Case No. 2:22-cv-00859-HL<br><br>**DECLARATION OF ROBERT KLAVINS** |

I, Robert Klavins, declare as follows:

**INTRODUCTION**

1. My name is Robert Klavins. I reside in unincorporated Wallowa County, near the town of Enterprise, Oregon.

2. I am a full-time staff person and member in good standing of Oregon Wild. I am familiar with and support Oregon Wild's mission to protect and restore Oregon's wildlands, wildlife, and waters as an enduring legacy for future generation. The organization has over 20,000 members and supporters here and across the country.

3. I have worked at Oregon Wild since October 2009. My current title is Northeast Oregon Field Coordinator. As part of that work, I regularly participate in the NEPA process and work with public agencies, colleagues, and other stakeholders to advocate for projects and practices that best protect wildlife habitat, clean cold water, functioning ecosystems, thriving human communities, and other values provided by our forests – especially on public lands.

4. I am also a member in good standing of Greater Hells Canyon Council, Central Oregon LandWatch, and Great Old Broads for Wilderness. I understand and support their missions and work.

5. In addition to my work at Oregon Wild, I volunteer for local non-profits and help run our working farm and bed & breakfast. Our bed & breakfast has been at the forefront of agritourism and ecotourism in our region. Our farm produces hay, pasture for stock animals, pork, chicken (meat), eggs, turkeys, garlic, greens, and more. It is sold locally at retail and wholesale, and we have customers across the state. Both our farm and bed & breakfast depend on the values of our public forests. Our home, farm, and business is less

than 2.5 miles from the boundary of the Wallowa Whitman National Forest. We irrigate with water that comes directly off the forest, and our drinking water comes from an aquifer that is primarily replenished on the forest. In addition to supporting our own way of life, spiritual values, and recreational pursuits, our customers are drawn to our National Forest lands. We regularly hear them cite wildlife, solitude, and big trees as things that bring them to the area and keep them coming back. We also hear their concerns about logging and other threats to these lands as things that detract from their experiences.

## I. THE EASTSIDE SCREENS

### A. MORGAN NESBIT

6. My family chose to make our home here largely because of the proximity to public lands and values they provide—especially wildlife. Few landscapes have been more important to me than those that are covered by the proposed Morgan Nesbitt project. I have regularly recreated in nearly all of it—from the edge of the Eagle Cap Wilderness and down into the Hells Canyon National Recreation Area. This is some of Oregon's most rugged and remote country and I believe it hosts the most complete assemblage of large native wildlife in the state. Much of the project area is miles from the nearest paved road, home, or structure. I regularly hike, camp, and observe wildlife in this project area and have shared this landscape with dozens of visitors including friends, conservationists, politicians, reporters, artists, and scientists. For over a decade, I have led a team of volunteers monitoring wildlife using a system of trail cameras in this area. I have flown over the area, hiked it, and rafted along its boundaries. I have gathered wild foods. I have also observed old growth logging (trees over 300 years old) in the area by the U.S. Forest Service (USFS) as well as grazing violations, timber poaching, and other illegal activities that the agency has

not addressed.

7.      For years, I have been aware of interest by the timber industry, logging collaborative, the USFS, and others to develop a logging project in this area. I have engaged in numerous discussions, joined field trips, raised concerns, given presentations, and participated in aspects of this project at every opportunity. I have done so as an independent citizen and in my role at Oregon Wild and a member / observer of the relevant collaborative(s). A number of our members have done so as well. Our organization has funded wildlife monitoring by scat detection dogs and supported other wildlife recovery efforts for wolverine, wolves, marten, owls, fisher, songbirds, and other species on this landscape. We have also recruited volunteers to help in these efforts. I have also visited ancient Nez Perce cultural sites and colonial historic sites here. The adjacent area is home to large and old trees that bear scars of Indigenous people peeling cambiums of ponderosa pines for food.

8.      On numerous occasions, we and others have been told by USFS representatives that the agency plans to apply the Trump Administration's illegal amendment of the Eastside Screens to log large trees as part of the project. We and others have raised verbal and written objections to this and other aggressive and destructive aspects of the project, including during a field trip that took place in the summer of 2021 where the agency had marked large Douglas Fir trees for timber harvest. They cited the Trump Screens amendment to justify it, even though Douglas fir trees are fire tolerant species.

9.      I intend to continue to participate in this process and visit, hike, camp, and observe the large and old-growth trees and wildlife in the Morgan Nesbitt Project area as long as I am able. As of this writing, I already have plans to visit the area as soon as it is

accessible both alone as well as with a local volunteer who helps monitor our wildlife trail camera program and has a longstanding interest in the area.

### B. ELLIS

10. I have spent a great deal of time in the area that is now covered by the Ellis Project in the Umatilla National Forest. On my personal time, I have camped, hiked, viewed wildlife, driven, and enjoyed the landscape. Observing a great gray owl here is a particularly memorable highlight. That observation was part of a camping trip that I took after learning of the Ellis Project. It was not my first or last visit to the area. In addition to wanting to learn more about the landscape, I enjoyed the solitude, wildlife, forests, and waters of the area and understand that Forest Service reports highlight some of those values as being important to many others, and in short supply on the Forest.

11. In my professional work, I have actively participated and engaged in discussions about management of this area before the Ellis Project was proposed. Since it was initiated, I have formally engaged in the process with USFS staff, elected officials, collaborative members, hunters, Indigenous leaders, scientists, and others. I have gone on field trips, helped create and submit comments, and raised concerns in formal and informal conversations along the way and continue to do so.

12. There are parts of the Ellis project that Oregon Wild supports, but our biggest concerns are logging in undeveloped wild landscapes and large-tree logging such as what is permitted by the Screens Amendment.

13. As I plan my summer, I intend to return to the Ellis project area of the Umatilla National Forest for personal and professional reasons. I hope to enjoy the large and old trees, solitude, intact forests, wildlife, and waters of the area. I intend to continue doing

so as long as I am able. If large, old trees are cut and removed from the forest as part of the Ellis project, the harm to my and Oregon Wild's interests will be irreparable because the benefits provided by those trees—biodiversity, habitat for wildlife, and carbon sequestration—will be removed along with them. Even the threat of such logging has already harmed my interests and that of my organization and its members.

14. I know that some stakeholders are eager to log large trees in this landscape and have pressured the agency to do so here and elsewhere. The agency has heard objections from numerous stakeholders, yet still developed an alternative that allowed the cutting of large trees using the amendment.

**CONCLUSION**

15. In all of these landscapes, I have enjoyed the presence of large trees – living, dying, and dead – and the values they support such as wildlife habitat, healthy soil, cool air, and clean cold water. I appreciate the values I cannot see, but understand, such as the role these trees play in sequestering carbon. Prior to this amendment, the Screens protected just the largest 3% of trees in Eastern Oregon. Science has shown that these trees sequester 42% of the carbon on those landscapes, and actively sequester far more carbon than their smaller, younger, less fires-resistant counterparts.

16. My organization helped found numerous collaborative groups around the state including groups covering these landscapes. I participated as a formal member for over 6 years and continue to observe and—when possible—participate as a member of the public. We were able to support numerous projects on these forests that accomplished goals of ecological restoration, economic output, and social benefit in large part because of

sideboards like the Screens that ensured large trees were protected. When these sideboards became threatened, we and others withdrew our formal membership due to numerous factors, but especially the devolvement of having to once again argue over whether to log large, old trees. We have since seen increased conflict over these projects, fraying public trust, and damaged relationships that took decades to build.

17. I have celebrated, appreciated, and defended the Screens for years and seen many others do the same. Despite misgivings, I worked in good faith with the Forest Service when it was announced that an effort was underway to amend the rules. Numerous colleagues did the same. I worked with scientists, citizens, Indigenous groups, public health organizations, former leadership of the USFS, climate watchdogs, and many others to help guide the process and provide meaningful input. Having been a part of planning processes for over a decade, I found this process to be uniquely disingenuous, dismissive, perfunctory, preordained, undemocratic, hostile, and frustrating.

18. I understand the irreplaceable value of large trees and have seen firsthand the ecological, economic, social, and spiritual damage that can be caused by their removal. In addition to the projects I am aware of that are already planning to implement the Screens amendment, I visit many other landscapes where the amended Screens will apply. In all of these places, my interests, the interests of my organization and its members and supporters, as well as those of many others will be irreparably harmed if the amended rules (and process by which they were created) are allowed to stand.

19. My interests and those of Oregon Wild and its members, allies, and supporters will be served by the Forest Service following the law, provide a robust, transparent and legally-compliant public process for reviewing the Eastside Screens.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 19th day of December, 2022, in unincorporated Wallowa County, Oregon.

Robert Klavins