Meriel L. Darzen, OSB No. 113645,
meriel@crag.org
Oliver J. H. Stiefel OSB No. 135436
oliver@crag.org
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Phone: (503) 525-2725
Fax: (503) 296-5454

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **GREATER HELLS CANYON COUNCIL**, **OREGON WILD**, **CENTRAL OREGON LANDWATCH**, **SIERRA CLUB**, **GREAT OLD BROADS FOR WILDERNESS**, and **WILDEARTH GUARDIANS**,<br><br>Plaintiffs,<br><br>v.<br><br>**HOMER WILKES**, in his official capacity as Undersecretary for Natural Resources and Environment; **GLENN CASAMASSA**, in his capacity as Regional Forester for Region 6; and the **UNITED STATES FOREST SERVICE**,<br><br>Defendants,<br><br>**AMERICAN FOREST RESOURCE COUNCIL**, and **EASTERN OREGON COUNTIES ASSOCIATION**,<br><br>Defendants-Intervenors. | Case No. 2:22-cv-00859-HL<br><br>**DECLARATION OF DOUG HEIKEN** |

I, Doug Heiken, declare as follows:

## INTRODUCTION

1.  My name is Doug Heiken. I reside in Eugene, Lane County, Oregon.

2.  I am a full-time staff and member in good standing of Oregon Wild. I am familiar with and support Oregon Wild's mission to protect and restore Oregon's wildlands, wildlife, and water.

3.  My job title is Conservation and Restoration Coordinator. An important part of my job is to participate in the NEPA process on behalf of more than 20,000 members and supporters of Oregon Wild. I engage with federal land management agencies when making decisions affecting Oregon's environment. My objective is to encourage good land management practices that conserve land, water, habitat, recreation, and our climate, and discourage practices that are harmful to water quality in streams, springs, and wetlands; harmful to terrestrial and aquatic ecosystems and fish & wildlife, including threatened & endangered species; harmful to recreation and scenic beauty; harmful to mature & old-growth forests; and harmful to the global climate.

### I. OREGON WILD AND THE EASTSIDE SCREENS

4.  Oregon Wild has worked to protect old growth trees and forests in eastern Oregon for almost 50 years, frequently opposing timber sales where large and old trees were being liquidated. Oregon Wild was involved in the administrative processes leading up to the creation of the Eastside Screens. To the best of my knowledge, Oregon Wild was among the petitioners represented by National Resource Defense Council attorneys Niel Lawrence and David Edelson who in the early 1990s requested that the PNW Regional Forester revise the Minimum Management Requirements (MMRs) for old growth

associated species of wildlife on the "Eastside" national forests of Oregon and Washington. Oregon Wild has been avid defenders of the Screens ever since. Since their adoption in 1994-95, Oregon Wild has participated in the NEPA process for scores of forest management projects that retained large trees because they followed the Eastside Screens. The Screens were instrumental in helping Oregon Wild decide to support many projects that focus on thinning small trees while protecting large trees. This has helped avoid numerous administrative appeals and potential litigation.

  5.  Oregon Wild participated throughout the process leading up to the 2021 Amendment of the Eastside Screens. On or about May 15, 2020, I submitted on behalf of Oregon Wild unsolicited scoping comments on the proposed Forest Management Direction for Large Diameter Trees in Eastern Oregon. My comments urged the Forest Service to recognize that large trees are fire resistant and resilient, recognize the ecological value of large trees regardless of age, prepare an Environmental Impact Statement (EIS), consider a wide range of alternatives, and consider incorporating a variety of new information into eastside forest management standards. I also participated in virtual public meetings regarding the proposed plan amendment.

  6.  On or about October 13, 2020, I submitted on behalf of Oregon Wild comments on the Forest Management Direction for Large Diameter Trees in Eastern Oregon Preliminary Environmental Assessment. Specifically, my comments raised concerns about the need for an EIS, the removal of large trees undermines the core purpose of the Eastside Screens which is to maintain old forest structure, the failure to harmonize climate change mitigation and climate change adaptation, the improper analysis of the no action alternative and the failure to recognize that forest management goals are met by thinning

small trees and retaining large trees, the need to retain large trees to help restore habitat for wildlife that require large snags, a variety of problems with the revised standards for retention of snags and green replacement trees, the lack of analysis of effects to riparian and aquatic species, the inadequate analysis of effects to wildlife associated with Late Old Structure, and other concerns. Oregon Wild also joined in comments dated October 13, 2020 submitted by a coalition of 25 conservation groups. Oregon Wild would also have submitted an administrative objection, had the opportunity been provided as promised throughout the planning process.

7. I enjoy seeing the large trees and knowing that they are supposed to be protected by the Eastside Screens. I understand that there is a severe shortage of large trees and large snags on the landscape due to decades of clearcutting, high grading, and other logging methods that remove large, old-growth trees. I understand that it will take a long time to address the shortage of large trees and large snags because it takes a long time to grow large trees, and some large trees are still being lost to fire, insects, salvage logging, and hazard tree logging. I understand that it will take even longer to address the shortage of large trees and large snags if the Forest Service removes large trees as described in the Trump Administration's Amendments to the Eastside Screens. I understand that large trees and large snags provide disproportionate ecosystem services, such as habitat for a wide variety of wildlife species, carbon storage that helps moderate global climate change, recreation, scenic splendor, and moderating fire hazard. I understand that large trees, even if they are not old trees, provide many of the same ecosystem services as old trees, including wildlife habitat and carbon storage. I understand that restoring a healthy population of large snags to support wildlife and other ecosystem services provided by dead wood, requires

maintaining and restoring a suitable population of green trees, and embracing the natural mortality processes that create snags. I understand that widespread logging that reduces the population of medium and large trees will delay the restoration of desired levels of large snags and associated wildlife.

### A. 42 ROAD GNA

8. On or about October 22, 2021, I submitted comments on behalf of Oregon Wild on the Deschutes National Forest's 42 Road GNA Project Categorical Exclusion. This project involves approximately 758 acres of commercial logging, including removal of large trees up to 30" diameter breast height (dbh) in reliance of the Trump Administration's illegal amendment of the Eastside Screens, approximately 2,197 acres of non-commercial thinning and ladder fuel treatments, as well as pile burning, mastication, and prescribed fire. My comments urged the Forest Service (FS) to recognize fire as a natural part of Oregon forest ecosystems, that the most effective way to address community wildfire protection is to reduce fuels in the structure ignition zone, not commercial logging miles away. We also urged the FS to retain large trees (>20" dbh) which are ecologically valuable and scarce on the landscape. We noted that large tree retention is required by the Healthy Forest Restoration Act, and we urged the Forest Service to refrain from relying on the Trump Administration's illegal amendment of the Eastside Screens.

*9.* The 42 Road GNA Project is sandwiched between forest roads 40 and 42 (aka Century Drive), west of Crane Prairie Reservoir and east of Sunriver, Oregon. I use and enjoy this area regularly since it is located along a "back way" from my home in Eugene to Central Oregon, via the Crescent Cutoff and Cascades Lakes Scenic Byway. I have visited this project area numerous times over the last 20 years. I use and enjoy the

affected areas for hiking, driving for pleasure, nature appreciation, wildlife observation, and personal renewal. I plan on going back to enjoy the forests that are part of the 42 Road GNA Project in the future.

### B. SOUTH WARNER & BURNT WILLOW

10. On or about July 19, 2021, I submitted comments on behalf of Oregon Wild on the Fremont-Winema National Forest's South Warner Project Categorical Exclusion. The South Warner Project involves approximately 16,000 acres of commercial logging including removal of large trees up to 30" dbh in reliance of the Trump Administration's illegal amendment of the Eastside Screens, as well as tens of thousands of acres of other vegetation treatments. My comments on the South Warner Project raised concerns regarding the need to retain large trees and the illegality of the Trump Administration's Amendment of the Eastside Screens, the improper use of a Categorical Exclusion intended for low-impact non-commercial restoration for large-scale commercial logging, the need for an Environmental Assessment in order to facilitate informed public comment, the unduly narrow set of restoration goals, the greater adverse trade-offs associated with commercial logging compared to non-commercial thinning, the need to conserve the disproportionate ecological values in unroaded areas larger than 1,000 acres, the need to consider a range of alternatives that retain more medium and large trees to better meet goals for snag habitat, future recruitment of large trees, carbon storage, riparian and aquatic restoration, wildlife hiding cover, scenic values, maintaining genetic diversity and evolutionary selection processes, fire resilience, etc

11. In 2006 and 2007, I submitted comments on behalf of Oregon Wild on the Fremont-Winema National Forest's Burnt Willow Project which involved 3,200 acres of

commercial logging units that overlap with logging units of the South Warner Project. My comments raised concerns that the FS needs to do a better job of balancing the competing objectives of habitat, fuel reduction, and profitability; the need to retain more green trees to recruit adequate habitat over time for diverse wildlife that depend on snags; and the ecological values of unroaded area need to be protected from roads and commercial logging.

      12.     On or about September 21, 2021, I visited the South Warner and Burnt Willow Projects. I drove through a large part of the project area and hiked through some logging units. I enjoyed seeing beautiful old growth forests and large trees representing a variety of species—Ponderosa pine, grand fir/white fir, and aspen. I am attaching a few pictures that I took while visiting this area. I saw large grand fir/white fir trees (21-30" dbh) that might be cut by the South Warner Project. The large trees I saw appeared to me to be valuable part of the ecosystem. They either served essential functions of large and old trees in areas where large and old trees were in short supply (due to past logging and construction of the Ruby gas pipeline), or they were needed as "recruitment trees" to replace true old growth trees (>30" dbh, >150 years old) that were in declining health. In my review of the South Warner Project, it appeared to me that the greatest ecological restoration need that could be met by logging, was removal of small trees (<21" dbh). I have a deep personal connection to this part of Oregon, and I plan to return to this project area in the future.



I took the picture above on September 21, 2021 near forest road 3910, near the trailhead to Rogger Meadow. This stand is already Late Old Structure with lots of true old-growth white fir, Ponderosa pine, and aspen. Large white fir >21" dbh needs to be retained here in order to maintain and replace the population of large (>30" dbh) old trees that will die someday.



I took the picture above on September 21, 2021 near forest road 3910, near the trailhead to Rogger Meadow. Large conifer trees can and do co-exist with aspen trees. There is no need to remove large conifers to restore aspen.



I took the picture above on September 21, 2021 along forest road 3910 near Twin Springs Campground. Large trees are uncommon, so this stand is not Late Old Structure (LOS). Large trees 21-30" dbh need to be retained her in order to provide some of the ecological functions of LOS. The ecosystem might benefit from thinning of some of the small trees in the background.

## CONCLUSION

13. While visiting the forests in the South Warner Project, I was buoyed by my understanding the role of those large trees in providing habitat for fish & wildlife, storing carbon to moderate global climate change, moderating fire hazard, and enhancing quality of

life through recreation and scenic values. All these benefits I receive from large trees will be reduced and degraded if large trees are removed as described in the Trump Administration's Amendment of the Eastside Screens as implemented through the South Warner Project Categorical Exclusion.

14. If large trees (>20" dbh) are removed as part of the 42 Road GNA and the South Warner Projects, my interests and those of Oregon Wild will be irreparably harmed. My aesthetic and recreational interests will be harmed because there will be fewer large trees to see and enjoy, fewer opportunities to see and enjoy wildlife associated with large trees and snags, and more carbon in the atmosphere making my experience of global climate change incrementally worse. Large trees of similar stature with similar functions and benefits will not regrow in my lifetime.

15. My interests and those of Oregon Wild will be served by the Forest Service following the law, because it will require the agency to conduct a legally compliant NEPA analysis of the proposed amendment of the Eastside Screens, giving the public and the decision-maker a more accurate picture of the benefits of retaining large trees and the harms from removing large trees (as well as the benefits and harms associated with the amended standards related to snags and green trees), will require consideration of a broader range of alternatives, and will require the Forest Service to provide an administrative objection period which will allow the public to make the case for continued conservation of large trees. In which case it is more likely that more large trees will be retained for my and Oregon Wild members' enjoyment.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this  23rd  day of May  2022, in Eugene, Oregon.

*Doug Heiken*

_____
  Doug Heiken