**Greg A. Hibbard,** OSB No. 183602
ghibbard@nwresourcelaw.com
NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1568

**David O. Bechtold**, OSB No. 133019
dbechtold@nwresourcelaw.com
NORTHWEST RESOURCE LAW PLLC
1500 SW First Avenue, Suite 985
Portland, OR 97201
503.664.3582

*Attorneys for Proposed Amicus Curiae
James Johnston, Ph.D.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| GREATER HELLS CANYON COUNCIL, et al., | CV No. 2:22-CV-00859-HL |
| Plaintiffs, | |
| v. | JAMES JOHNSTON, Ph.D.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE* |
| HOMER WILKES, et al., | |
| Defendants, | |
| and | |
| AMERICAN FOREST RESOURCE COUNCIL and EASTERN OREGON COUNTIES ASSOCIATION, | |
| Defendant-Intervenors. | |

JAMES JOHNSTON, Ph.D.'S REPLY IN SUPPORT
OF MOTION FOR LEAVE TO PARTICIPATE AS
AMICUS CURIAE -- 1

NORTHWEST RESOURCE LAW PLLC
1500 SW First Avenue, Suite 985
Portland, OR 97201
503.664.3582

**INTRODUCTION**

Professor Johnston is the flag bearer of a group of prominent forestry scientists attempting to, as a friend of the Court, provide insight on the scientific record before the Court. This agreement across the scientific community is rare, and it is good public policy to invite this expertise within the confines of *amicus curiae* principles. Professor Johnston does not ask that the Court take his submissions as evidence to supplement the record or even cite his submissions in any subsequent order. However, Professor Johnston and his colleagues have identified that Plaintiffs are misconstruing scientific concepts to the Court—alleging scientific controversy and highly uncertain effects associated with the Screens Amendment—and, as a result, Professor Johnston seeks to provide the Court with necessary background information to understand the record and Plaintiffs' claims. *See* ECF No. 41, Memorandum in Support of MSJ at 13, 26-36.

Professor Johnston's submissions boil down to two specific observations based on his and his colleagues' expertise: (1) "no meaningful scientific controversy among scientists exists" pertaining to the Screens Amendment (ECF No. 57 at 4; ECF No. 57-1 at 3; ECF No 58, Ex. A at 3); and (2) the uncertainty of the Forest Service's decision was reduced by proper use of preferred modeling technologies (ECF No. 57-1 at 2-3; ECF No 58, Ex. A at 7-9). Professor Johnston respectfully requests that the Court grant him leave to participate as an *amicus curiae* so that he may provide this collective scientific perspective to the Court.

This Reply addresses the directive from the Court regarding Professor Johnston's declaration and briefly responds to arguments made by Plaintiffs in response to Professor Johnston's Motion.

JAMES JOHNSTON, Ph.D.'S REPLY IN SUPPORT
OF MOTION FOR LEAVE TO PARTICIPATE AS
AMICUS CURIAE -- 2

NORTHWEST RESOURCE LAW PLLC
1500 SW First Avenue, Suite 985
Portland, OR 97201
503.664.3582

# ARGUMENT

## A. Professor Johnston Is Attempting to Assist the Court in Understanding the Record, Not Attempting to Supplement the Record.

On February 14, 2023, the Court directed Professor Johnston "to provide legal authority for an amicus to submit an extra-record declaration such as the one he has provided." The Court referred to a decision outlining the role of an *amicus curiae*. *See WildEarth Guardians v. Jeffries*, 370 F.Supp.3d 1208, 1228 (2019). Professor Johnston recognizes that an *amicus curiae* "does not have the prerogatives of a proper party." *Id.* However, Professor Johnston is distinguishable from the *amicus curiae* in *WildEarth Guardians*. Professor Johnston does not move to submit extra-record evidence to the record, attempt to bring his own causes of action, or intend to submit an unpermitted brief. *Id.* at n. 2. Instead, as this court described in *WildEarth Guardians* as the proper role of an *amicus*, Professor Johnston only seeks to "provide perspective on the issues the parties themselves raise." *Id.*

Professor Johnston directly addresses issues raised by Plaintiffs. Plaintiffs repeatedly allege scientific controversy or highly uncertain effects associated with the Screens Amendment. ECF No. 41, Memorandum in Support of MSJ at 13, 26-36. As experts on the subject matter, Professor Johnston and his colleagues explain that, within their profession, there is no scientific controversy regarding the Screens Amendment and the report relied on by the Plaintiffs mischaracterizes relevant research in suggesting the presence of scientific controversy. ECF No. 58, Ex. A at 3, 6-7. Professor Johnston and his colleagues also explain that the modeling conducted by the Forest Service was done with the "tool of choice"—the Forest Vegetation Simulator—that reduced uncertainty regarding the impacts of the East Screens Amendment. *Id.*

at 7-9. These opinions provide insight to the Court by those most informed on the issues raised by Plaintiffs.

The Seventh Circuit has identified multiple ways that an *amicus curiae* "can contribute in clear and distinct ways." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020). Most relevant here, those include "[c]onveying instruction on highly technical, scientific, or specialized subjects beyond the ken of most generalist federal judges." *Id.* Offering such a perspective allows an *amicus curiae* brief to "offer something different, new, and important." *Id.* This purpose has been endorsed by this court. In an unpublished decision, a federal agency moved to strike declarations and exhibits offered by *amici curiae* "on the ground they constitute[d] extra-record material the court may not consider on judicial review of final agency actions under the Administrative Procedure Act." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, CV 01-640RE, 2005 WL 878602, at *1 (D. Or. Apr. 8, 2005). This court evaluated the issue by referring to Ninth Circuit caselaw on the consideration of extra-record materials when conducting judicial review of an agency decision. *Id.* (citing *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). Under that standard, this court "found no authority supporting" the federal agency's "broad proposition" of a "hard-and-fast rule" that *amici* may not present extra-record materials. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 2005 WL 878602, at *4. This court concluded that the *amici*'s materials were appropriate to the extent that they "serve[d] the purpose of assisting the court," specifically by "help[ing] explain complex or technical scientific issues." *Id.* This court then individually evaluated declarations under that purpose, striking paragraphs that it determined strayed beyond the bounds of an *amicus* filing. *Id.* at *4-*6.

JAMES JOHNSTON, Ph.D.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO PARTICIPATE AS AMICUS CURIAE -- 4

NORTHWEST RESOURCE LAW PLLC
1500 SW First Avenue, Suite 985
Portland, OR 97201
503.664.3582

There are multiple other examples of district courts inviting or considering expertise or unique experiences from *amici curiae* to inform substantive issues or complicated records. *See, e.g.*, *United Food & Commercial Workers Union, Local No. 663 v. United States Dep't of Agric.*, 36 F.4th 777, 779 (8th Cir. 2022) (acknowledging that *amici curiae* participated to explain the impacts of vacatur); *Hunter v. Bostelmann*, 21CV512JDPAJSEEC, 2021 WL 4592659, at *3 (W.D. Wis. Oct. 6, 2021) (denying scientists' motion to intervene but inviting expertise as *amici curiae*); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 51 (D. Mass. 2015), *aff'd*, 807 F.3d 472 (1st Cir. 2015) (inviting students to provide individual viewpoints as *amici curiae*). Professor Johnston respectfully asserts that correcting Plaintiffs' mischaracterization is an important offering to the Court that, as the experts in this field, is different than what can be provided by any other party.

As Plaintiffs recognize, the mere act of submitting a declaration in support of an *amicus* brief is not inappropriate. ECF No. 60 at 10 n. 8 (discussing Nez Perce *amicus* filings). Indeed, federal courts may allow proposed *amici* to submit declarations to explain their unique perspectives. *See, e.g.*, *Students for Fair Admissions, Inc.*, 308 F.R.D. at 51 (inviting declarations from *amici curiae*); *see also United Food & Commercial Workers Union, Local No. 663*, 36 F.4th at 779 (acknowledging that *amici* had filed declarations before the district court to explain the impacts of vacatur).

Plaintiffs instead object to the content of Professor Johnston's declaration, characterizing his submissions as "post-decisional opinion testimony and journal articles." ECF No. 60 at 10 n. 8 (emphasis omitted). Contrary to Plaintiffs' mischaracterization, and regardless of the date of Professor Johnston's declaration or the journal articles, his submissions "assist[] the court in

understanding the administrative record as it existed at the time of the disputed" decision. *Alsea Valley All. v. Evans*, 161 F. Supp. 2d 1154, 1160 n. 3 (D. Or. 2001). The opinions of Professor Johnston and his colleagues presented to the Court—that there is no scientific controversy regarding the Screens Amendment and the effects will not be highly uncertain—are not post-decisional opinions. Those opinions are reflected in the record and Professor Johnston is concerned that Plaintiffs are distorting the record to generate controversy and uncertainty. Professor Johnston's submissions are more aptly described as fifteen prominent forest scientists offering expertise to the Court with the hope of correcting Plaintiffs' post-decisional mischaracterization of the record. From a public policy perspective, having scientists of this stature step forward as friends of the Court is highly desirable and, as a matter of practice, somewhat extraordinary. In the confines of *amicus* principles, it is not something to be discouraged.

Although Plaintiffs are correct that the articles attached to Professor Johnston's letter were published after the Forest Service made its decision, Plaintiffs fail to appreciate the content of those articles. Those studies constitute "invited reviews" or "syntheses" as requested by respected scientific journals. In other words, no post-decisional original research was conducted for those articles. Those articles summarized the existing states of the science. Published in 2021, months after the Forest Service's Decision Notice on the Screens Amendment, the articles do not summarize any research that occurred after the agency's decision. In that sense, the articles serve to explain the state of the science as it stood before the agency at the time of its decision.

In the event that the Court determines that aspects of Professor Johnston's submissions are improper, Professor Johnston respectfully requests that the Court follow the lead of the

JAMES JOHNSTON, Ph.D.'S REPLY IN SUPPORT
OF MOTION FOR LEAVE TO PARTICIPATE AS
AMICUS CURIAE -- 6

NORTHWEST RESOURCE LAW PLLC
1500 SW First Avenue, Suite 985
Portland, OR 97201
503.664.3582

*WildEarth Guardians* and *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.* decisions and use his submissions for their "proper purpose, that is, informing its analysis of the parties' claims and arguments." *WildEarth Guardians*, 370 F.Supp.3d at 1228. In the very least, fifteen prominent forest scientists presenting an opinion that, contrary to Plaintiffs' arguments, "no meaningful controversy among scientists exists" and that the Forest Service used the modeling "tool of choice" to reduce uncertainty, serves this proper purpose of an *amicus curiae*. ECF No. 58, Ex. A at 3, 7.

**B. Professor Johnston's Prior Informal Interactions with the Forest Service Do Not Render the Opinions Presented by Him and His Colleagues Inappropriate for an *Amicus* Submission.**

Plaintiffs assert that Professor Johnston is beyond a friend of a party, let alone a permissible friend of the Court. ECF No. 60 at 7. This argument distorts Professor Johnston's interactions with the Forest Service.

Professor Johnston and his colleagues do not possess an interest in the ultimate outcome of this case. Instead, they have an interest in preventing parties such as Plaintiffs from "confus[ing] salient issues rather than accurately characteriz[ing] the state of the science." ECF No. 58, Ex. A at 3. As the Seventh Circuit recently opined, "[t]he fiction that an *amicus* acts as a neutral information broker, and not an advocate, is long gone." *Prairie Rivers Network*, 976 F.3d at 763. While Professor Johnston considers himself a neutral information broker interested in defending an accurate depiction of the relevant science, his alignment against the Plaintiffs does not render his *amicus* filings inappropriate.

To be clear, Professor Johnston and his colleagues only share their opinions with the Court in their personal capacity. Professor Johnston is an Assistant Professor at a public, land-

JAMES JOHNSTON, Ph.D.'S REPLY IN SUPPORT
OF MOTION FOR LEAVE TO PARTICIPATE AS
AMICUS CURIAE -- 7

NORTHWEST RESOURCE LAW PLLC
1500 SW First Avenue, Suite 985
Portland, OR 97201
503.664.3582

grant university. He is not an employee of the Forest Service, was not a paid consultant of the Forest Service, did not develop alternatives, and did not opine on the decision to adopt the Screens Amendment. Professor Johnston consulted with members of the Forest Service's interdisciplinary team just as he has previously consulted with numerous other organizations, including conservation groups, in different contexts. Professor Johnston does not present his and his colleagues' opinion as an arm of the Forest Service. Professor Johnston presents the personal opinions that he and fourteen of his colleagues share in defense of the science that they are uniquely familiar with.

## CONCLUSION

As evidenced by the fourteen signatures noting agreement with his letter, Professor Johnston is a flag bearer for the personal opinions of prominent scientists seeking to act as friends of the Court regarding the contested scientific issues before the Court. Professor Johnston does not seek to offer evidence, but to convey scientific expertise. Inviting this unique expertise is good public policy given the scientific subject matter. Turning away these scientists, as Plaintiffs request, risks telling the scientific community that it should sit on the sidelines of the judicial process. The Court should send a welcoming message to the scientific community to help the Court understand complex scientific and technical issues within the confines of *amicus curiae* principles. Professor Johnston's submissions explain that there is no scientific controversy regarding the Screens Amendment and that the effects are not highly uncertain. If the Court determines that portions of Professor Johnston's submissions do not align with the purposes of *amicus curiae,* Professor Johnston respectfully requests that the Court use its discretion to take the steps it deems necessary while still considering the core messages of his submissions.

DATED this 2nd day of March, 2023.

                               NORTHWEST RESOURCE LAW PLLC

                               *s/ Greg A. Hibbard*
                               Greg A. Hibbard, OSB No. 183602
                               ghibbard@nwresourcelaw.com
                               Phone: 206.971.1568
                               David O. Bechtold, OSB No. 133019
                               dbechtold@nwresourcelaw.com
                               Phone: 503.664.3582

                               *Attorneys for Proposed Amicus Curiae James Johnston, Ph.D.*

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, District of Oregon, Pendleton Division using the CM/ECF system on March 2, 2023. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED this 2nd day of March, 2023.

*s/ Greg A. Hibbard*
Greg A. Hibbard, OSB No. 183602
David O. Bechtold, OSB No. 133019

*Attorneys for Proposed Amicus Curiae James Johnston, Ph.D.*